# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **CHRISTOPHER MICHAEL FERRELL** | ) | |
| | ) | **Case No. 3:21-cv-00402** |
| **v.** | ) | |
| | ) | |
| **BERT BOYD** | ) | |

**To:    The Honorable Aleta A. Trauger, United States District Judge**

## REPORT AND RECOMMENDATION

Before the Court is Christopher Michael Ferrell's ("Petitioner") petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, in which Petitioner asserts that his convictions and his sentence should be declared unconstitutional and invalid. (Docket No. 1.) Petitioner filed a memorandum in support of his petition. (Docket No. 10.) Bert Boyd ("Respondent") filed a response. (Docket No. 16.)  Petitioner filed a reply. (Docket No. 20.)[1] The Court referred this matter to the Magistrate Judge to recommend disposition of the petition. (Docket No. 26.)

Having considered the parties' arguments and the underlying record under the exacting standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), the undersigned respectfully recommends that the petition be **DENIED** and this action be **DISMISSED**.

---

[1] Petitioner's original petition and supporting memorandum (Docket Nos. 1 and 10) were filed *pro se*. Counsel later entered an appearance on behalf of Petitioner (Docket No. 19) and filed the reply (Docket No. 20) on his behalf.

# I.   BACKGROUND

On March 6, 2015, Petitioner was convicted by a jury in Davidson County Criminal Court of second-degree murder in the shooting death of Wayne Mills. (Docket No. 15-1 at 64.)[2] *See Ferrell v. State*, No. 32019-00726-CCA-R3-PC, 2020 WL 5230387, at *1 (Tenn. Crim. App. Sept. 2, 2020) ["*Ferrell II*"]. The conviction arose from events that occurred in the early morning hours of November 23, 2013 in a bar operated by Petitioner in Nashville, Tennessee. In its decision considering Petitioner's appeal from the denial of post-conviction relief, the Tennessee Court of Criminal Appeals ("TCCA") provided the following summary of the evidence presented at Petitioner's trial:

> Petitioner was charged and convicted of second-degree murder in the shooting death of Wayne Mills. *State v. Christopher Michael Ferrell*, M2015-01011-CCA-R3-CD, 2016 WL 6819784 (Tenn. Crim. App. Nov. 18, 2016), *perm. app. denied* (Tenn. Mar. 9, 2017). The shooting occurred in the early morning hours of November 23, 2013. Earlier in the evening, the victim and Eric Lee Beddingfield attended a George Jones tribute concert in downtown Nashville. *Id.* at *1. Following the event, the victim told Mr. Beddingfield that he was going to see Shooter Jennings perform "at a show downtown somewhere." *Id.* The victim texted Mr. Beddingfield sometime between 2:00 and 2:30 a.m. and told him that Petitioner had invited Mr. Jennings and him to go to Petitioner's bar, the Pit and Barrel. *Id.* When Mr. Beddingfield arrived at Petitioner's bar sometime between 2:30 and 3:00 a.m., the victim and others were already there. Petitioner was serving drinks, and neither Petitioner nor the victim appeared intoxicated. *Id.* Mr. Beddingfield left the bar sometime between 4:00 and 4:30 a.m. He testified that "[i]t was a great mood" and "there was no tension and there w[ere] no arguments." *Id.* at *2.
>
> Thomas Howard arrived at Petitioner's bar with Susan Branam and Nadia Markham sometime between 2:00 and 2:30 a.m. Mr. Howard testified that the atmosphere at

---

[2] The state court record is located at Docket Entry Nos. 15-1 to 15-37. When the Court references a page within a document from the state court record, it will reference the filed document page number, rather than the original page number from the state court document or the CM/ECF PageID number. As an example, the record page with the filing footer excerpted below would be referenced as "Docket No. 15-1 at 2".

| Case 3:21-cv-00402   Document 15-1   Filed 07/21/21   Page 2 of 142 PageID #: 84 |

the bar was "relaxed for the most part." *Id.* Mr. Howard, Ms. Branam, and Ms. Markham were preparing to leave the bar at around 4:30 a.m. Mr. Howard testified that the victim and Petitioner were the only people remaining at the Pit and Barrel. *Id.* He testified that he saw the victim sitting at the bar smoking a cigarette. Defendant walked up to the victim, slapped the cigarette out of his hand, and told him that it was a non-smoking bar. *Id.* Mr. Howard testified that the victim stood up and "paced back-and-forth a few times going toward the door." Mr. Howard thought the victim was leaving, but the victim turned around and said to Petitioner, "if you ever smack my hand like that again, I'll kill you." *Id.*

Ms. Branam and Ms. Markham left the bar, and Mr. Howard was about to walk out when he turned around and saw the victim throw a glass on the ground and break it. *Id.* at *3. Mr. Howard "took a few steps" outside and heard the bar door open. Mr. Howard testified, "just as soon as I heard the door open, I heard three shots in rapid succession." *Id.* Mr. Howard turned around and saw the victim on the ground. He testified that the victim fell facedown, and he did not see anything in the victim's hands. *Id.*

Petitioner called 911 at 4:56 a.m. and stated that someone had pulled a gun on him and that there was "no danger now[.]" *Id.* Petitioner told a responding officer that the victim "tried to rob" him and that Petitioner "thought [the victim] was going to kill [Petitioner]." The officer testified that Petitioner "was kind of hysterical[.]" Id. Petitioner had dragged the victim inside the bar. The victim was "lying face up" with towels underneath him. *Id.* at *4. He was "breathing heavily" and had been shot in the back of his head. The victim was taken to a hospital where he died later that morning. *Id.*

Sergeant Michael Kent, of the Metro Nashville Police Department, testified that Petitioner looked "very upset." He testified that Petitioner said to him, "I just shot my friend in the head. Oh, my God, I just shot my friend in the head. He said he was going to kill me and I just shot him." *Id.*

Detective Leonard Peck, Jr., the lead investigator in the case, took a statement from Petitioner after Petitioner was transported to the police station. Petitioner stated that the victim was "drunk, drunk" that night. *Id.* Petitioner stated that the victim became "progressively [ ] more belligerent" throughout the morning. *Id.* Petitioner told Detective Peck that the shooting occurred after he saw the victim smoking at the bar. Petitioner explained that he was "vehemently against any smoking in [his] bar," and he reached across the bar and crushed the victim's cigarette. *Id.* Petitioner stated that the victim "went off[.]" Petitioner told the victim to leave, and he told the victim that he could not take his drink outside. Petitioner stated that the victim threatened to kill him and threw his drink on the ground. Petitioner stated that he saw the victim "grab something that [he] thought was a gun." *Id.*

Petitioner stated that he did not intend to shoot the victim but that the victim "scared the hell out of [him]." *Id.* Petitioner pulled a gun that he kept behind the bar and

shot in the victim's direction. Petitioner saw the victim fall out the door and onto the ground. He dragged the victim back inside the bar and placed towels under his head. Petitioner told Detective Peck that he found a .45 caliber revolver that Petitioner normally kept beside the cash register on the floor in the doorway. *Id.* at *5. He stated that he did not know how the victim got the revolver. Detective Peck pressed Petitioner, and Petitioner admitted that he had panicked and placed the revolver there. Petitioner stated that the victim had pointed his cell phone at him, but that he thought at that moment, the victim was going to shoot him. *Id.*

Detective Peck left the interview room. A video recording of the interview that was played for the jury showed Defendant alone in the room crying and asking, "Wayne, you stupid son of a b---h, why did you do that?" *Id.* When Detective Peck returned to the room, he advised Petitioner of his Miranda rights. At that point, Petitioner asked if he was under arrest, and Detective Peck responded that he just wanted to get "an official statement." *Id.*

Nadia Markham testified for Petitioner. She testified that she and Mr. Howard were "heavily" intoxicated and that they spent most of their time there that night either outside smoking or in the bathroom. *Id.* at *7–8. Ms. Markham testified that she and Mr. Howard were in the bathroom having a "rendezvous" just before they left the Pit and Barrel. She saw the altercation between Petitioner and the victim at the bar over the victim's smoking. Ms. Markham did not witness the shooting. She testified that she was getting into Ms. Branam's vehicle when she heard the "[v]ery loud" sound of glass breaking followed by three gunshots. *Id.* at *8.

A more detailed summary of the evidence presented at trial is found in the opinion on direct appeal. *Id.* at *1–11. Following a jury trial, Petitioner was convicted of second degree murder and sentenced by the trial court to 20 years' incarceration to be served at 100 percent. Petitioner's conviction and sentence were affirmed on direct appeal.

*Ferrell II*, 2020 WL 5230387, at *1–2.

## II. POST-TRIAL STATE COURT PROCEEDINGS

Petitioner directly appealed his March 2015 conviction to the TCCA, and in November 2016, that court affirmed the judgment of the trial court. *State v. Ferrell*, No. M2015–01011–CCA–R3–CD, 2016 WL 6819784 (Tenn. Crim. App. Nov. 18, 2016) ["*Ferrell I*"]. The TCCA found no merit in any of Petitioner's assertions on appeal, which were as follows: (1) the evidence was insufficient to sustain his conviction, specifically arguing that he should have been acquitted for acting in self-defense or convicted instead of voluntary manslaughter; (2) the trial court erred

in denying his request for a special jury instruction regarding the State's failure to preserve evidence; (3) the trial court committed several errors when instructing the jury on self-defense; (4) the trial court abused its discretion in setting the length of his sentence; and (5) he was entitled to a new trial based upon cumulative error. *Id.*

Petitioner then filed a petition for post-conviction relief, which was denied by the post-conviction court after an evidentiary hearing. *Ferrell II*, 2020 WL 5230387, at *1. Petitioner appealed the denial to the TCCA. *Id.* In that appeal, Petitioner alleged multiple instances of ineffective assistance of trial counsel, including: (1) failing to adequately investigate, interview, and call several witnesses at trial; (2) failing to file a motion to suppress Petitioner's statement to police; (3) failing to cross-examine the State's witnesses about the victim's character for peacefulness with evidence of the victim's propensity for violence; and (4) failing to cross-examine investigating officers about an incident in 2013 in which Petitioner alleged one of the officers stole a pistol from his home. *Id.* Petitioner also alleged that he was denied a right to a fair trial due to severe weather and due to the State's use of testimony that the prosecutor should have known was false. *Id.* In September 2020, the TCCA denied relief to Petitioner and affirmed the judgment of the post-conviction court. *Id.* at *13.

In November 2020, Petitioner filed an application with the Tennessee Supreme Court for permission to appeal, but the application was denied in January 2021. (Docket Nos. 15-35, 15-36.)

### III. *HABEAS CORPUS* PETITION AND RESPONSE

After failing to obtain relief in the state courts, Petitioner filed the instant petition on April 6, 2021, seeking *habeas corpus* relief under 28 U.S.C. § 2254. (Docket No. 1.) Petitioner initially filed his *pro se* petition in the United States District Court for the Eastern District of Tennessee at Greeneville, but the petition was transferred to this Court. (Docket No. 5.) Shortly after the case

was transferred, Petitioner filed a *pro se* memorandum in support of his petition. (Docket No. 10.)

In the petition and memorandum, Petitioner asserts four grounds for relief:

1.  Petitioner's "initial statements" should have been suppressed;

2.  Trial counsel provided ineffective assistance by failing to (a) investigate and call material witnesses, (b) file a motion to suppress, (c) present proof of the victim's "propensity for violence," (d) adequately cross-examine witnesses, and (e) object to "inappropriate arguments" made by the State;

3.  Petitioner's "trial was harmed by failure to continue when defense witnesses couldn't get to court due to extreme weather"; and

4.  The prosecutor engaged in misconduct.

(Docket No. 1 at 4–11; Docket No. 10 at 9–33.)

In response, Respondent argues that Petitioner's first ground for relief is, in essence, a claim for a violation of his *Miranda* rights, which is procedurally defaulted. (Docket No. 16 at 29–31.) Respondent additionally argues that, as for Petitioner's second claim for ineffective assistance of trial counsel, the state court did not reach a decision that contravened or unreasonably applied federal law or that unreasonably determined the facts when it rejected Petitioner's claims 2(a), (b), and (c), and that claims 2(d) and (e) are procedurally defaulted. (*Id.* at 31–50.) Respondent contends that Petitioner's third claim regarding the weather and its impact on a witness's ability to testify is also procedurally defaulted. (*Id.* at 50–52.) Finally, as to the fourth claim regarding prosecutorial misconduct, Respondent maintains that the claim is procedurally defaulted and meritless. (*Id.* at 52–56.)

Counsel subsequently entered an appearance on behalf of Petitioner (Docket No. 19) and filed a reply on his behalf. (Docket No. 20.) The substance of Petitioner's reply as to specific claims is discussed below.

6

## IV.   STANDARDS OF REVIEW

The petition in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences … and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). As the Supreme Court explained, the AEDPA "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). The AEDPA, therefore, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of the AEDPA's most significant limitations on federal courts' authority to issue writs of *habeas corpus* is found in 28 U.S.C. § 2254(d). Under the AEDPA, a court may grant a writ of *habeas corpus* on a claim that was adjudicated on the merits in state court only if that adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Put another way, Section 2254(d) forbids a federal court from granting *habeas* relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision falls within the scope of either section 2254(d)(1) or (2).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Hill v. Curtin*,

7

792 F.3d 670, 676 (6th Cir. 2015) (*en banc*) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). "Clearly established" federal law is the law in effect at the time of the state court's adjudication. *Greene v. Fisher*, 565 U.S. 34, 38–40 (2011). Additionally, the scope of "clearly established federal law" is limited to only the holdings, and not the *dicta*, of Supreme Court decisions. *White v. Woodall*, 472 U.S. 415, 419 (2014). Where no Supreme Court case confronts the specific question posed by a state court case, the state court's decision cannot be "contrary to" a holding of the Supreme Court. *Woods v. Donald*, 575 U.S. 312, 317 (2015) (citing *Lopez v. Smith*, 574 U.S. 1, 6 (2014)). Further, the state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*).

A state court's decision involves an "unreasonable application" of federal law under Section 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Hill*, 792 F.3d at 676 (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous" – instead, the federal court must find that the state court's application was "objectively unreasonable." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)). As the Supreme Court admonished, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

The Supreme Court has repeatedly emphasized the intentionally demanding standard for *habeas corpus* relief under Section 2254, directing that a reviewing court may not "treat[] the

reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* at 102–03 (internal quotation marks omitted). A petitioner, therefore, "must show that the state court's ruling … was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id*. at 103. This is a very high standard, which the Supreme Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id.* at 102.

Review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). "When no Supreme Court precedent 'clearly forecloses' a state-court decision, it is not an unreasonable application of federal law as decided by the Supreme Court." *Bogle v. Hall*, No. 1:21-CV-00020, 2021 WL 5331278, at *10 (M.D. Tenn. Nov. 16, 2021) (citing *Woods v. Etherton*, 578 U.S. 113, 118 (2016)).

Under Section 2254(d)(2), a federal court may grant *habeas* relief if it finds that "the state court's factual determination was objectively unreasonable in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). State court factual determinations are only unreasonable "if it is shown that the state court's presumptively correct factual findings are rebutted by clear and convincing evidence and do not have support in the record." *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (quoting *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007)). *See also* 28 U.S.C. § 2254(e)(1) (determination of factual issues

by state court are "presumed to be correct" and petitioner has "burden of rebutting the presumption of correctness by clear and convincing evidence"). "It is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was based on that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)).

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). That opportunity is attendant when the convicted defendant fairly presents the substance of his claim or claims in each appropriate state court as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996) (the substance of the claim must have been presented as a federal constitutional claim). This rule of total exhaustion requires that every claim set forth in the federal *habeas corpus* petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39).

A claim for federal *habeas* relief must be both "technical[ly] exhausted," *Coleman v. Thompson*, 501 U.S. 722, 732 (1991), and "properly exhausted," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A claim is technically exhausted when state remedies are no longer available to the petitioner. *Coleman*, 501 U.S. at 732 (citing 28 U.S.C. § 2254(b)). As explained by our sister court in the Western District of Tennessee:

Technical exhaustion therefore encompasses not only situations where the petitioner fully presented his claim to the state courts, but also instances where the prisoner did not present his claim to the state courts at all or failed to present it to the highest available court, and the time for doing so has expired. *Boerckel*, 526 U.S. at 845; *Wood v. Ngo*, 548 U.S. 81, 92-93 (2006). If federal habeas courts were generally allowed to review such claims, the exhaustion provision's purpose of giving the state courts the first opportunity to resolve federal constitutional issues would be "utterly defeated." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). "To avoid this result, and thus protect the integrity of the federal exhaustion rule," a claim must be "properly" exhausted, meaning it must be "fairly presented" through "one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845, 848 (internal quotation marks and italics omitted).\

*Douglas v. Westbrooks*, No. 114CV01333STAEGB, 2018 WL 739029, at *4 (W.D. Tenn. Feb. 6, 2018).

"The exhaustion requirement works in tandem with the procedural default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts." *Id*. (citing *Boerkel*, 526 U.S. at 848). Procedural default can occur in two ways, broadly speaking. First, it occurs when a petitioner "fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any 'remaining state court avenue' for review of the claim on the merits." *Id*. (quoting *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007)). *See also Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted.")). Second, it occurs when the state court "actually … relied on a state procedural bar as an independent basis for its disposition of the case." *Douglas*, 2018 WL 739029, at *4 (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)) (internal brackets omitted).

To excuse a procedural default and gain consideration of a defaulted claim, a petitioner must demonstrate cause and prejudice for the failure, or that a miscarriage of justice will result

from the lack of review. *Coleman*, 501 U.S. at 750; *see also House v. Bell*, 547 U.S. 518, 536 (2006). The burden of showing cause and prejudice to excuse defaulted claims rests with the *habeas* petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman*, 501 U.S. at 754).

A petitioner may establish cause by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective impediments include an unavailable claim or interference by officials that made compliance impracticable. *Id.* To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted). To further safeguard against fundamental miscarriages of justice, the Supreme Court has also recognized a narrow exception to the cause requirement where a constitutional violation "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray*, 477 U.S. at 496).

## V.     ANALYSIS

After review of the petition, the memorandum in support of the petition, the response, the reply, and the entire record, the Court finds that the petition may be resolved without an evidentiary

hearing. The Court addresses Petitioner's claims in the order in which he presents them in his

original memorandum (Docket No. 10):[3]

1.    FAILURE TO SUPPRESS AND *MIRANDA* RIGHTS (CLAIM 1)

Before the Court can address the merits of Petitioner's first claim, it must address the scope

of the claim. Respondent contends that Petitioner is seeking relief on the grounds that his

statements to police were illegally obtained without the advice of his *Miranda* rights, and therefore

the statements should have been suppressed at his trial. In other words, Respondent frames this as

a stand-alone *Miranda* claim rather than as a claim for ineffective assistance of counsel for failing

to move to suppress the statements. Respondent argues that this stand-alone claim is procedurally

defaulted because Petitioner did not raise it in the state courts. (Docket No. 16 at 29–31.)

Petitioner disagrees with Respondent's contention that this claim is procedurally defaulted

and describes the claim as one for ineffective assistance of counsel "for failing to move to

suppress." (Docket No. 20 at 8.) Petitioner argues that this claim, which he maintains was properly

raised in state court, entitles him to *habeas* relief.

In briefing in support of his appeal of denial of post-conviction relief, Petitioner described

this issue as one for ineffective assistance of counsel for failing to "file a plainly meritorious

motion to suppress." (Docket No. 15-30 at 2, 28–38.) In its opinion, the TCCA similarly treated

Petitioner's claim as one that his "counsel was ineffective in failing to file a motion to suppress."

*Ferrell II*, 2020 WL 5230387, at *10.[4]

_____

[3]  Petitioner's reply presents his claims in a different order and with somewhat different
descriptions. (Docket No. 20.) Nevertheless, for simplicity of reference, the Court addresses the
claims in the order raised by Petitioner in his original memorandum, with a discussion of any reply
arguments made by Petitioner.

[4]  However, as discussed in more detail below, the TCCA concluded that Petitioner was not
entitled to relief because his "trial counsel's decision not to seek suppression of Petitioner's

The Court agrees that Petitioner raised these arguments during the state court proceedings, and this claim is not procedurally defaulted. In other words, the Court does not view this claim as a stand-alone *Miranda* claim but, rather, as one for ineffective assistance of counsel for failing to file a motion to suppress. However, as detailed below, the Court concludes that Petitioner has not presented a compelling basis that the TCCA's adjudication of this claim was an unreasonable application of or contrary to established federal law or resulted in a decision based on an unreasonable determination of the facts that would entitle him to *habeas* relief under 28 U.S.C. § 2254(d).

### A.    Legal Standard for Ineffective Assistance of Counsel

The Sixth Amendment, as applied to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to effective assistance of counsel. The two-prong legal rule governing a claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court made clear in *Strickland* that a convicted defendant's complaint of his counsel's deficient performance is measured from the objective standard of a reasonable attorney and a petitioner's evidentiary burden of showing the claimed deficiency is by a preponderance of the evidence. *Id*. at 686–87; *see also Higgins v. Renico*, 470 F.3d 624, 631–32 (6th Cir. 2006). To prove ineffective assistance of counsel, a petitioner must show that (1) considering all circumstances, counsel's performance was so deficient that counsel was not functioning as guaranteed by the Sixth Amendment, and (2) that counsel's performance prejudiced the petitioner's defense. *Id.* at 687–89.

---

statement to police was an informed strategic decision based upon adequate preparation." *Ferrell II*, 2020 WL 5230387, at *11.

To establish the first prong, the "performance" prong, a petitioner must overcome the strong presumption that counsel's behavior was within the wide range of reasonable professional assistance. *Id.* at 687. "Because advocacy is an art and not a science … [counsel's] strategic choices must be respected" if they were "made after thorough investigation of law and facts relevant to plausible options." *Id*. at 681, 690. As the Sixth Circuit has made clear, "[s]uch choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference. *Higgins*, 470 F.3d at 632. As emphasized by the Supreme Court:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland,* 466 U.S. at 689 (internal quotation marks and citations omitted). A petitioner seeking *habeas corpus* relief must therefore show that counsel's behavior cannot be attributed to sound trial strategy. Where the petitioner fails to overcome the presumption that the challenged action "might be considered sound trial strategy," a federal court cannot find ineffective assistance. *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

"Even where counsel's performance is deficient, a petitioner is not entitled to habeas relief unless he also demonstrates ensuing prejudice." *Higgins*, 470 F.3d at 633–34. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693. Indeed, "[v]irtually every act or omission of counsel

would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (citation omitted).

Rather, to establish this second prong, the "prejudice" prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* While it is not necessary for a petitioner to prove that counsel's deficient conduct more likely than not affected the verdict, a petitioner must show that "absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt." *Moore v. Carlton*, 74 F.3d 689, 693 (6th Cir. 1996). While a petitioner must satisfy both prongs of the *Strickland* test, courts are not required to conduct an analysis under both, and a court need not address the question of competence if it is easier to dispose of the claim for lack of prejudice. *Bogle*, 2021 WL 5331278, at *12 (citing *Strickland*, 466 U.S. at 697).

Due to the restrictive scope of review under the AEDPA, "when a claim of ineffective assistance of counsel is raised in a federal habeas petition, such as here, the question to be resolved is not whether the petitioner's counsel was ineffective." *Id.* at *13. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

As the Supreme Court directed:

This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of [Section] 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.' A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

* * *

> Establishing that a state court's application of *Strickland* was unreasonable under §
> 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d)
> are both "highly deferential," . . . and when the two apply in tandem, review is
> "doubly" so . . . . The *Strickland* standard is a general one, so the range of reasonable
> applications is substantial. . . . Federal habeas courts must guard against the danger
> of equating unreasonableness under *Strickland* with unreasonableness under §
> 2254(d). When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable. The question is whether there is any reasonable argument that
> counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 101, 105 (citations omitted). The standard of review of a claim of

ineffective assistance of trial counsel presented in a petition brought under Section 2254 is

therefore "doubly deferential."

> The first level of deference is that counsel is "strongly presumed to have rendered
> adequate assistance and made all significant decisions in the exercise of reasonable
> professional judgment." *Strickland*, 466 U.S. at 668. The second level of deference
> is that the federal court must defer to the state court's prior adjudication of
> effectiveness unless it was "contrary to, or involved an unreasonably application
> of, clearly established Federal law, as determined by the Supreme Court of the
> United States." 28 U.S.C. § 2254(d)(1).

*Potter v. Litteral*, No. 5:16-CV-00183-TBR-LLK, 2017 WL 9807439, at *9 n.6 (W.D. Ky. Sept.

5, 2017), *report and recommendation adopted in part* 2018 WL 2341579 (W.D. Ky. May 23,

2018).*See also Burt*, 571 U.S. at 15 (explaining that *habeas* review of ineffective assistance of

counsel "gives both the state court and the defense attorney the benefit of the doubt") (quoting

*Cullen*, 563 U.S. at 190). A state court's determination that an ineffective assistance of counsel

claim lacks merit under *Strickland* "precludes federal habeas relief so long as 'fair-minded jurists

could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101

(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## B. Claim: Failure to File a Motion to Suppress

Throughout his briefing, Petitioner reiterates many of the same arguments that he made in state court about why the failure to file a motion to suppress constitutes ineffective assistance of counsel. However, Petitioner offers very little argument or evidence that the state court's application of the *Strickland* standard was unreasonable.

In his petition, Petitioner describes this claim as, "Whether petitioner's initial statements should have been suppressed." (Docket No. 1 at 4.) As supporting facts, Petitioner describes what occurred shortly after the shooting: he was forced to stand outside in the cold; he was not permitted to use his cellphone, eat, or speak to friends and family; he was denied medical attention, food, or rest; he was taken to an interrogation room; and he was "aggressively questioned" by police. (*Id.*) He asserts that the police failed to "read[] him his *Miranda* rights" and that he did not have the "benefit of … counsel." (*Id.*)

In his supporting memorandum, Petitioner again describes his interactions with police and with his friends and family shortly after the shooting and discusses the interview that the police conducted with him. (Docket No. 10 at 10–11.) Petitioner states that he was provided with his *Miranda* rights, but not until he had spoken with the police for some time in an interview room. (*Id.* at 11.) He contends that the state played a video of the statements he made during the interview to the jury, but that his counsel failed to object or file a motion to suppress. (*Id.*)

Petitioner further asserts in his reply that he is entitled to *de novo* review of this claim. (Docket No. 20 at 15–20.) He argues that he was prejudiced when his counsel failed to move to suppress the interview. (*Id.* at 17.) He reiterates the underlying facts to show that his claim for a violation of his *Miranda* rights was "plainly meritorious." (*Id.* at 19–26.) Petitioner then argues that his trial counsel was "unaware" that the motion was meritorious, so trial counsel had no

reasonable strategy for not filing the motion. (*Id.* at 26.) Petitioner points to the statement made by trial counsel during the cross-examination of Detective Peck that trial counsel was "not in any way suggesting that your [Detective Peck's] statement and questions [during the interview] was illegal in any way." (*Id.* at 27.)

The Court finds Petitioner's arguments unconvincing. Petitioner's contention that his trial counsel was "unaware" that a motion to suppress was meritorious is contradicted by trial counsel's testimony during the hearing in the post-conviction court that such a motion had factual support. Specifically, during the post-conviction hearing, trial counsel testified:

> But at the end of the day as an attorney, I felt that I had enough information that I could file a suppression hearing to try to seek to suppress Mr. Ferrell's [Petitioner's] statement. I mean, I don't know if it would have been successful or not, but certainly I would have done that. I had enough facts to do it.

(Docket No. 15-28 at 64:1–7.) Trial counsel additionally testified that, although there was enough information to file a motion to suppress the statements Petitioner made when interviewed by the police shortly after the shooting, counsel decided to not do so because Petitioner was going to testify in his own defense and the statements would likely be admitted anyway in an effort to impeach Petitioner. (Docket No. 15-28 at 67:9–13.) Trial counsel also thought the interview contained exculpatory statements regarding Petitioner's fear of the victim. (*Id.* at 67:23–68:13.)

The TCCA considered Petitioner's claim under *Strickland* and concluded that trial counsel made a reasonable and informed strategic decision to not file a motion to suppress and that Petitioner failed to establish that he was prejudiced by trial counsel's failure to file the motion. *Ferrell II*, 2020 WL 5230387, at *10–11. As described by the TCCA, the post-conviction court:

> found that "Petitioner would have had a reasonable probability of success on a motion to suppress, and [trial counsel] conceded as much when he testified that he felt that he had a sufficient basis to raise the issue in a motion to suppress." The court concluded, however, that trial counsel made "a reasonable strategic decision" not to file a motion to suppress, "as it would have been extremely difficult to

properly raise self-defense without the Petitioner testifying." The post-conviction court found that trial counsel's decision to allow the statement to be admitted during the State's case-in-chief, rather than risk the statement being admitted to impeach Petitioner, was "precisely the type of reasonable strategic decision that is not to be second-guessed by the post-conviction court."

Additionally, the post-conviction court concluded that Petitioner failed to establish that he was prejudiced by trial counsel's failure to file the motion to suppress. Trial counsel testified that the statement was in some ways exculpatory and corroborated Petitioner's testimony that he acted in self-defense because he was fearful of the victim.

*Id*. at *10–11.

Applying applicable federal standards, the TCCA concurred with the post-conviction court's conclusions. *Id*. As noted by the TCCA, the post-conviction court found that "Petitioner would have had a reasonable probability of success on a motion to suppress and [trial counsel] conceded as much when he testified that he felt he had a sufficient basis to raise the issue in a motion to suppress." *Ferrell II*, 2020 WL 5230387, at *10.[5] Notwithstanding this concession, trial counsel calculated that it would have been extremely difficult to properly raise self-defense without the Petitioner testifying, which would open the door to admission of Petitioner's statement for impeachment purposes. *Id*. Counsel also testified that Petitioner's statement was "in some ways exculpatory and corroborated his testimony that he acted in self-defense because he was fearful of the victim." *Id.* at *11.

Ultimately, the TCCA agreed that trial counsel's decision to allow admission of Petitioner's statement to police was "an informed strategic decision based on adequate preparation," *id*., and held "that the post-conviction court properly concluded that trial counsel had a reasonable strategic rationale for not filing the [suppression] motion." *Id.* at *10. The TCCA also

---

[5] Failure to file a suppression motion is ineffective assistance of counsel if the meritorious nature of the motion is so plain that "no competent attorney would think a motion to suppress would have failed." *Premo v. Moore*, 562 U.S. 115, 124 (2011).

agreed that Petitioner failed to establish that his counsel's decision to not file a motion to suppress the interview caused him prejudice, relying in part on trial counsel's statement that the interview was exculpatory in some sense because it corroborated Petitioner's testimony that he was fearful of the victim and acted in self-defense. *Id.* at *11.

The TCCA correctly identified and applied *Strickland* to deny Petitioner's claim. The TCAA's determination that not filing a suppression motion was a reasonable strategic decision by trial counsel is not contrary to *Strickland*. That decision-making is exactly the kind of sound trial strategy of which a post-conviction court should refrain from second-guessing. *Strickland*, 466 U.S. at 689. Petitioner fails to demonstrate otherwise.

Petitioner also argues that the trial court did not consider the "appropriate standards" set forth in *Missouri v. Seibert*, 542 U.S. 600 (2004), regarding whether Petitioner was "in custody" during his interview with police. (Docket No. 10 at 14 and Docket No. 20 at 18–30.) In the limited context of an ineffective assistance of counsel claim, the sole question before this Court is whether the TCCA unreasonably applied or contradicted clearly established federal law or made a decision that was "objectively unreasonable" under *Strickland* when evaluating Petitioner's ineffective assistance of counsel claim for failure to file a motion to suppress. The question is not whether the trial court correctly determined whether Petition was "in custody."

As the Supreme Court made clear, this Court's inquiry is more limited: "[f]or purposes of [Section] 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. Petitioner fails to present any authority that the question of his custodial status is properly considered in the context of a federal *habeas corpus* petition under Section 2254(d). *See*

*also Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.") (internal citation omitted). Further, as made clear

> [a]n objectively unreasonable application "is different from an *incorrect* application of federal law … a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

*Hutchison v. Bell*, 303 F.3d 720, 728–29 (6th Cir. 2002) (quoting *Williams*, 529 U.S. at 410–11). Petitioner has not established that the TCCA unreasonably applied federal law.

Petitioner fails to offer any basis from which to conclude that his trial attorney's rationale for not filing a motion to suppress, on custodial or any other grounds, was not sound trial strategy. In the absence of this necessary showing, the Court cannot grant *habeas* relief to Petitioner on this claim.

## 2.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL (CLAIM 2)

In his petition, Petitioner asserts that his trial counsel was ineffective because he failed to (a) investigate and call material witnesses, (b) file a motion to suppress, (c) obtain experts and proof, (d) present proof of the victim's "propensity for violence," (e) adequately cross-examine witnesses, and (f) object to "inappropriate arguments" made by the state. The Court will address each of these claims separately.

### A.    Claim: Failure to Investigate and Call Material Witnesses

Petitioner asserts that his trial counsel rendered ineffective assistance of counsel when he failed to "investigate" and call certain "material witnesses." (Docket No. 1 at 6.) Petitioner argues that the TCCA's opinion is "objectively unreasonable" because trial counsel was required to

"explore all reasonable and available defense strategies which requires consultation with experts or introduction of expert evidence whether pretrial, at trial, or both." (Docket No. 20 at 31.)[6]

Petitioner references six witnesses but focuses on only three – Susan Branam, Jon Hensley, and Stacey McCoy.[7] (Docket No. 20 at 32–36.) Petitioner also asserts that his trial counsel should have presented exhibits, including a Nashville Fire Department policy about entering a crime scene before it has been cleared by the police department and a photograph of the bar where the shooting occurred. (Docket No. 10 at 4, 17, 21–22.)[8] The substance of the record below, and its purported importance according to Petitioner, is summarized as follows.

---

[6] The Court finds it unnecessary to discuss separately Petitioner's claim that trial counsel was ineffective for failing to "investigate" material witnesses. (Docket No. 20 at 30–31.) Petitioner raises this argument in the context of his asserted claim that trial counsel was deficient for "failing to investigate and call material witnesses," including experts. (*Id*. at 30.) However, Petitioner fails to explain how the purported failure to investigate is independent of his claims that trial counsel was ineffective for failing to call experts and other witnesses. The substance of Petitioner's claims about missing witnesses and experts, including adequacy of investigation by trial counsel, is discussed below. Nevertheless, to the extent that Petitioner asserts that he properly raises ineffective assistance of counsel based on an independent failure to investigate, that argument fails because Petitioner makes no showing of what specific additional evidence counsel should have pursued and how any such additional evidence would have been material. *Hutchison*, 303 F.3d at 748–49. Further, as to those matters about which trial counsel testified, as discussed below, the Court finds that trial counsel's decisions were sound trial strategy based on adequate investigation. *See, e.g.*, *Fitchett v. Perry*, 644 F. App'x 485, 491 (6th Cir. 2016) (articulating standards for sufficiency of investigation).

[7] In his arguments to the TCCA, Petitioner also asserted that his trial counsel should have called Shelly Jean, Ken Ryan, and Samantha Barrett. (Docket No. 15-30 at 20–21.) In his memorandum in support of his petition, Petitioner references the fact that Ryan and Barrett did not testify. (Docket No. 10 at 4, 24.) However, Petitioner's substantive arguments for ineffective assistance of counsel do not include trial counsel's failure to call Jean, Ryan, or Barrett. *See* Docket No. 20 at 32-36. Therefore, the Court will not analyze whether trial counsel's failure to call these additional three witnesses was deficient.

[8] This claim is described and discussed in Petitioner's reply as "Trial and Post-Conviction Counsel procedural defaults that resulted in undue prejudice." (Docket No. 42-43.)

23

With respect to Branam, she was at the bar with Petitioner and others before the shooting occurred, and she was a witness to Petitioner's interactions with the victim, but not to the shooting itself. *Ferrell II*, 2020 WL 5230387, at *1. Petitioner argues that trial counsel's failure to call her as a witness contradicted the extensive references that trial counsel made to her testimony during opening argument and contradicted the testimony that she gave at the sentencing hearing, which, according to Petitioner shows that trial counsel did not have a "strategy" when it came to the decision to not call Branam. (Docket No. 10 at 16–17; Docket No. 20 at 32–34.) Petitioner further asserts that Branam's testimony would have corroborated his own testimony – particularly regarding the victim's alleged statement prior to the shooting that he was upset about the lack of "cocaine and whores" – which would have resulted in the jury giving Petitioner's testimony more weight. (Docket No. 20 at 33–34.)

The TCCA noted that trial counsel testified "at length" at the post-conviction evidentiary hearing about his decision to not call Branam for many reasons. *Id*. at *9–10. Those included Branam's resistance to testifying, the fact that Petitioner had lived with Branam for some time, Branam's reported use of alcohol and medications and her reported fragile or unstable mental state prior to the time she was to testify. Trial counsel also testified that he believed Branam would harm Petitioner's case if he forced her to testify. (Docket No. 15-28 at 38–46.) From this testimony, the TCCA determined that "trial counsel made a reasonably based strategic decision to not call Ms. Branam as a witness." *Id*. at *9.

Petitioner maintains that Hensley, who saw the victim and Petitioner at a different bar several hours before the shooting, would have testified about his interactions on the night of the

shooting with the victim and that the victim had acted aggressively.[9] (Docket No. 20 at 34.) Petitioner asserts that his trial counsel's decision to not call Hensley was an "objectively unreasonable determination of the facts in light of the evidence," but Petitioner does not provide any further argument to support this assertion. (*Id.* at 35.)[10] The TCCA stated that "[e]ven if the post-conviction court found credible Petitioner's testimony about what Hensley would have testified to, the post-conviction court concluded trial counsel's decision not to call witnesses was not deficient representation." *Ferrell II*, 2020 WL 5230387, at *8.

Petitioner argues that McCoy, who was in a romantic relationship with Petitioner at the time of the shooting, should have been called to testify at trial to "show that Decedent had a propensity for violence" (Docket No. 20 at 35) and at the post-conviction hearing because her testimony was "relevant" and would have "either corroborated or impeached the testimony of Trial Counsel." (*Id.* at 35.) Other than the reference to McCoy's testimony as purportedly showing some alleged conduct by the victim, Petitioner does not detail what McCoy's testimony would have been, either at trial or at the post-conviction evidentiary hearing. In consideration of Petitioner's arguments about McCoy's purported testimony, the TCCA stated:

> Petitioner asserts that Ms. McCoy was present at the post-conviction hearing and that he was prejudiced by post-conviction counsel's failure to call her to testify at the hearing. The transcript of the hearing shows that Ms. McCoy was among three witnesses who were instructed to leave the courtroom during other witnesses' testimony. Regardless of the reason Ms. McCoy did not testify at the hearing, the post-conviction court specifically accredited trial counsel's testimony that Ms. McCoy admitted to him that she had perjured herself at the preliminary hearing on Petitioner's domestic assault charge. Trial counsel testified that he considered calling Ms. McCoy as a defense witness at trial to refute any potential allegation by the State that Petitioner had a history of violent behavior. However, trial counsel

---

[9] Petitioner did not reference Hensley in his memorandum in support of his petition but did reference Hensley in his reply. (Docket No. 20 at 34–35.)

[10] Hensley is now deceased.

testified that he could not ethically call Ms. McCoy to testify at Petitioner's trial in light of her disclosure that she had perjured herself at the preliminary hearing and that Petitioner had in fact assaulted her. Furthermore, Petitioner has not shown how Ms. McCoy's testimony would have undermined the outcome of his trial.

*Ferrell II*, 2020 WL 5230387, at *10.[11]

After consideration of the facts and applicable authority, the TCCA determined that Petitioner failed to establish that his counsel rendered ineffective assistance by not calling these witnesses. *Id.* at *8–10. Ultimately, as to trial counsel, the TCCA concluded that "[t]he evidence does not preponderate against the post-conviction court's findings. Petitioner failed to demonstrate that, had counsel employed a different trial strategy, a reasonable probability exists that he would have obtained a different result." *Id.* at *10. In other words, Plaintiff suffered no prejudice, which is, alone, sufficient to deny Petitioner relief. The TCCA further held, about the post-conviction proceeding, that "[a]ll that due process requires in the post-conviction setting is that the petitioner 'have the opportunity to be heard at a meaningful time and in a meaningful manner.' Petitioner was provided that in this case. He is not entitled to relief." *Id.* (quoting *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995) quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

Petitioner does not cogently or convincingly argue that the TCCA's decision was contrary to any federal law, unreasonably applied any federal law, or was based on an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d). Instead, Petitioner merely reiterates the same arguments he made to the TCCA. The record does not provide any more support for Petitioner's claim now than it did then.

---

[11] Petitioner's arguments are also often convoluted and jumbled. For example, in the discussion in Petitioner's reply of his claim that counsel was deficient in not calling McCoy, Petitioner intermittently refers to McCoy and Branam (Docket No. 20 at 35) and interjects an argument that counsel was ineffective in failing to object to prosecutorial misconduct (*id.* at 36).

Plaintiff's failure to demonstrate that the TCCA unreasonably determined that he suffered no prejudice from counsel's decision to not call witnesses is alone enough to deny Petitioner's claim for *habeas* relief. *Bogle*, 2021 WL 5331278 at *12 (citing *Strickland*, 466 U.S. at 697). *See also Strickland*, 466 U.S. at 694 (to establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *Smith v. Jago*, 888 F.2d 399, 404–05 (6th Cir. 1989) ("[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment") (quoting *Strickland*, 466 U.S. at 691). In addition, Petitioner also fails to demonstrate that the TCCA unreasonably arrived at its determination that his attorneys' performances were not deficient.

Petitioner argues that, at least as to trial counsel, the decision to not call Branam was not a "strategy." (Docket No. 20 at 32.) However, Petitioner makes this allegation without any helpful explanation. The Court presumes that Petitioner's intent throughout his arguments is to show that his counsel's decisions to not call these witnesses or introduce this evidence were haphazard and not grounded in any reasonable strategy.[12] However, Petitioner's conclusory and perfunctory assertions are "insufficient to overcome the presumption of reasonable professional assistance and … warrant habeas relief." *Ortiz v. Clendenion*, No. 3:22-cv-00290, 2024 WL 1661123, at *8 n.8 (M.D. Tenn. Apr. 17, 2024) (citing *Avery v. Genovese*, No. 3:17-cv-255, 2020 WL 107100, at *6 (M.D. Tenn. Jan. 9, 2020)); *Jones v. Michigan*, No. 13-cv-11543, 2013 WL 3243017, at *2 (E.D.

---

[12] *See, e.g.*, Docket No. 20 at 35 ("However, because Trial Counsel alleged that it was his trial strategy to exclude Branham [sic] when it was clear he had no such strategy then everything else Trial Counsel testified to must be viewed as being unreliable because had a motive which included not wanting to be determined ineffective by the State Court."); *id*. at 43 ("[B]ecause counsel failed to call McCoy and Branham [sic] to testify in the post-conviction hearing it established cause and prejudice where an attorney's errors in post-conviction proceedings can qualify as cause to excuse a procedural default.").

Mich. June 26, 2013) ("Conclusory allegations do not provide a basis for habeas relief.") (citing *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003)). *See also Davis v. Lafler*, 658 F.3d 525, 537-38 (6th Cir. 2011). ("Without proof to the contrary, we must assume that counsel adequately considered the possibility, but ultimately decided that the best strategy was not to present [the missing witness's] testimony.") (internal citations omitted).

As for the omitted exhibits, specifically, the Nashville Fire Department Policy, Petitioner argues that admission of the policy as an exhibit was important because it would "mitigate" certain assertions that Petitioner should have procured assistance from nearby fire department personnel. Petitioner similarly argues that presentation of the photograph of the bar was important because it would impeach Howard's testimony and "prove" that Howard could not have witnessed Petitioner shoot the victim. (Docket No. 10 at 17, 21.)[13]  About these and the other exhibits that Petitioner claims he sought the introduction of at trial and the post-conviction hearing, the TCCA said:

> There is nothing in the record to show that Petitioner sought to introduce these exhibits at the post-conviction hearing, nor did Petitioner testify as to why he believed trial counsel should have introduced them at trial. Petitioner again asks this court to remand this case to the post-conviction court so that the exhibits may be "properly place[d] on the [r]ecord."
>
> All that due process requires in the post-conviction setting is that the petitioner have "'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). Petitioner was provided that in this case. He is not entitled to relief.

*Ferrell II*, 2020 WL 5230387 at *10.

---

[13] In his reply, Petitioner also refers to the decedent victim's medical records of the treatment he received for gunshot wounds as an exhibit that should have been introduced at trial and at the post-conviction hearing. (Docket No. 20 at 42–43.) However, Petitioner's description of the bases upon which he seeks *habeas* relief based on that specific circumstance is convoluted at best, and little more than a string of conclusory statements. (*Id.*)

In his reply, Petitioner asserts that he "has maintained since the conclusion of the evidentiary hearing these exhibits were never introduced but they were accepted by the State Trial Court." (Docket No. 20 at 42.) Petitioner provides no citation to the trial record to support that exhibits were not introduced but were made part of the trial record. Instead, Petitioner describes exhibits that were introduced and admitted at the post-conviction hearing. (Docket Nos. 15-28 and 15-29.)[14] He further "argues that post-conviction counsel submitted the exhibits at the hearing but that the exhibits never became part of the record which manifested a State created impediment preventing Petitioner's claims." (Docket No. 20 at 43.) Again, Petitioner provides no citation to the record, specifically to the transcript of the post-conviction evidentiary hearing, for this contention that his post-conviction attorney introduced exhibits that were not admitted.

The Sixth Circuit makes clear that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for party to mention a possible argument in the most skeletal way, leaving the court … to put flesh on its bones." *United States v. Gray*, 692 F.3d 514, 521 (6th Cir. 2012) (quoting *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010); *accord United States v. Simmons*, 794 F. App'x 461, 469 (6th Cir. 2019).[15] Further, and "[p]ut simply, the Court is not obligated to search the record on Petitioner's behalf to make his case for him." *Ballard v. Nagy*, No. 2:22-CV-10629, 2023 WL 6280254, at *4 (E.D. Mich. Sept. 26, 2023).

Petitioner has not demonstrated any supportable basis from which the Court can conclude that he is entitled to *habeas* relief on this claim of ineffective assistance of counsel, particularly

---

[14] Petitioner cites to Docket No. 15-28, but the Page ID#s are to Docket No. 15-29.

[15] The same is true for *pro se* litigants. *See e.g. Chong Hun Cook v. Gov't of Columbus, OH*, No. 19-3577, 2020 WL 3406068, at *2 (6th Cir. Jan. 15, 2020) (unpublished) ("[E]ven pro se litigants must provide some meaningful argument in support of a claim . . . .")).

given that this Court must be highly and doubly deferential, must consider the totality of evidence, and must apply a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. Petitioner's failure to provide any basis under Section 2254(d) for this claim compels denial of his requested relief.

### B.    Claim: Failure to File a Motion to Suppress

As discussed at length above, the Court finds no basis from which to conclude that the TCCA's decision that Petitioner failed to establish ineffective assistance of counsel for failure to file a motion to suppress either (1) demonstrated that the TCCA's decision was contrary to or involved an unreasonable application of clearly established federal law or (2) was based on an unreasonable determination of the facts within the meaning of Section 2254(d).

### C.    Claim: Failure to Obtain Experts and Related Proof

Petitioner asserts that his trial counsel provided ineffective assistance of counsel by failing to obtain a medical expert to testify on the victim's medical state and Petitioner's own post-traumatic stress disorder ("PTSD"), and by failing to obtain a firearms expert to testify on the weapons present during the shooting and the bullet trajectories.[16] He argues that, without testimony from these experts, he was denied a fair trial and is now unable to demonstrate prejudice. (Docket No. 20 at 37-38.) Petitioner asserts that his counsel "elected to use the State's experts" rather than obtain experts of their own, so Petitioner was left "without any credible experts to challenge the State's assertions" after the state objected. (Docket No. 10 at 18-19.) Petitioner contends that experts have "published reams of material that would and do support" his claims. (*Id.* at 20.)

---

[16] Petitioner did not argue in his petition or memorandum in support of his petition that an expert was needed to discuss his post-traumatic stress disorder. However, he raised this argument in his reply and had previously raised it to the TCCA.

As for the victim's medical state, Petitioner argues that his trial counsel's failure to call an expert to discuss the victim's intoxication levels, alcohol and drug interactions "made making a strategic decision impossible because an expert should have been called to testify." (Docket No. 20 at 38.) Regarding his own PTSD, Petitioner asserts that evidence about this condition would "not only be mitigation but also create a condition in the mind related to mens rea component of an offense." (*Id.* at 38.) Finally, Petitioner contends that a firearms expert could testify that the victim "had a much more lethal weapon loaded with tactical defense rounds," which would bolster Petitioner's claim of self-defense. (Docket No. 10 at 18.) Physical evidence of the shots fired would show how the victim had "come to be shot" and "inadvertently stepped into the line of accidental fire." (*Id.* at 19.)

Respondent contends that this claim fails because the TCCA did not reach a decision that contravened or unreasonably applied federal law or that unreasonably determined the facts when it rejected Petitioner's claim. Specifically, Respondent argues that Petitioner's assertion that he was prejudiced by his counsel's failure to obtain an expert is "wholly speculative." (Docket No. 16 at 38.)

The TCCA analyzed this claim as part of Petitioner's claim that his trial counsel failed to call witnesses:

> Petitioner also asserts that trial counsel was ineffective for failing to call an expert witness to testify that Petitioner suffered from post-traumatic stress disorder, a medical expert to testify about the victim's possible pre-existing head injuries and drug interactions, as well as "firearms experts to explain nuances regarding the weapon and ammunition used."
>
> The post-conviction court found that Petitioner failed to establish that he was prejudiced by trial counsel's failure to call the witnesses, noting that the only two witnesses to testify at the post-conviction hearing were Ms. [Samantha] Barrett [a witness to events at a different bar preceding the shooting] and Ms. [Sue] Tucker [Petitioner's mother]. Petitioner does not argue that Ms. Tucker should have been called as a witness at the trial.

31

The post-conviction court stated, "[w]hile the Petitioner has made claims about what most of the remaining witnesses would have testified to, the [c]ourt cannot rely on the Petitioner's summaries of that proposed testimony to allow the [c]ourt to evaluate the issue of prejudice." *Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Petitioner failed to call Mr. Ryan, Ms. McCoy, a medical expert, or a firearms expert. Without the testimony of these witnesses at the post-conviction hearing, Petitioner cannot demonstrate prejudice. *Id.* at 758.

*Ferrell II*, 2020 WL 5230387, at *8. In concluding that Petitioner was not entitled to relief, the TCCA found that Petitioner failed to demonstrate a reasonable probability that he would have obtained a different result had his counsel employed a different strategy with respect to the decision to not call witnesses, including expert witnesses. *Id.* at *8-10.

Once again, Petitioner has not shown to this Court that "the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. Petitioner does not cogently or convincingly argue that the TCCA's decision was contrary to any federal law, unreasonably applied any federal law, or was based on an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d). Instead, Petitioner broadly states that his counsel's failure to call expert witnesses resulted in prejudice to him and merely reiterates the same arguments he made to the TCCA. Those arguments do nothing to satisfy Petitioner's burden to demonstrate that the TCCA's determination was objectively unreasonable. *Schriro*, 550 U.S. at 465 (question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold) (internal citation omitted).

Given Petitioner's lack of any supportable argument to the contrary, the Court concludes that the TCCA's application of the *Strickland* test was not objectively unreasonable. *Hutchison*, 303 F.3d at 748-49 ("[A] petitioner cannot show deficient performance or prejudice resulting from

a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material.") In sum, Petitioner has simply failed to demonstrate that Section 2254(d) affords him any relief from the TCCA's decision on this claim.

### D.    Claim: Failure to Present Proof of the Victim's "Propensity for Violence"

Petitioner asserts that his trial counsel provided ineffective assistance of counsel because he failed to present evidence of the victim's character, in particular his alleged "propensity for violence and abuse of drugs and alcohol." (Docket No. 1 at 6.)[17]

During the post-conviction hearing, trial counsel testified that he did not introduce evidence regarding a prior violent act by the victim against a police officer because he believed that "if we went after [the victim]'s character, then that would open the door to an assault on [Petitioner]'s character" and Petitioner "would be the loser of that battle." *Ferrell II*, 2020 WL 5230387, at *4. In short, trial counsel "did not want to introduce character evidence about the victim because that would permit character evidence of Petitioner to be admissible." *Id.* at *8. In addition, trial counsel also did not call witnesses to testify about an incident that had occurred earlier that evening at a different bar, Full Moon Saloon, in which the victim was potentially violent because that testimony could have revealed that the victim did not have a firearm at the time, that Petitioner himself was known to have a bad temper, and that Petitioner was known to have "hundreds of guns," all of which "would have hurt" Petitioner. *Id.* at *4.

---

[17] This claim is described and addressed in Petitioner's reply as trial counsel's failure to present evidence of "Decedent's character" (Docket No. 20 at 38-41) and failure "to call MNPD Officer Michael Passero to testify to a felony assault that occurred against him from Decedent" (*id.* at 41-42).

The TCCA also analyzed this claim as part of Petitioner's broader claim that his trial counsel failed to call witnesses, including experts, and failed to introduce exhibits. *Ferrell II*, 2020 WL 5230387, at *8–10. In holding that "the evidence does not preponderate against the post-conviction's courts findings," *id*. at *10, the TCCA noted with approval the post-conviction court's finding that trial counsel's strategic decision to not introduce evidence of the victim's character to "avoid the possibility of a character battle between the Petitioner and the victim" was "precisely the sort of tactical decision that [a] court will not second-guess in the post-conviction context." *Id.* at *9. The TCCA similarly determined that the evidence supported the post-conviction court's finding that trial counsel had a "reasonable strategic rationale" for not calling witnesses to testify about the incident at Full Moon Saloon. *Id.* ("[Trial counsel] explained that he felt proof that the victim had been aggressive earlier in the evening was inconsistent with the defense theory that the victim suddenly snapped and would have raised questions for the jury about why the Petitioner even allowed the victim to come with him in the first place if he [was] behaving so aggressively."). Further, the TCCA concluded that Petitioner failed to demonstrate a reasonable probability that he would have obtained a different result had his counsel employed a different strategy with respect to the decision to not introduce evidence about the victim's character. *Id.* at *10.

The TCCA also analyzed this claim in the context of whether trial counsel failed to effectively cross-examine witnesses for the state. *Id.* at *11. Petitioner asserted that his counsel was deficient for failing to cross-examine the state's witnesses "about prior acts of violence by the victim." *Id.* The post-conviction court concluded that trial counsel was not deficient and that he made "a reasonable strategic decision … not [to] open the door to evidence of the Petitioner's character for violence." *Id.* The TCCA held that the evidence did not preponderate against the post-conviction court's findings and that Petitioner "presented no proof at the post-conviction

hearing to substantiate his allegation." *Id.* at *12. For all these reasons, the TCCA determined that Petitioner was not entitled to relief. *Id.*

Here, to support his claim for *habeas* relief, Petitioner argues that the strategy by his trial counsel to avoid a "character contest" was "irrational." (Docket No. 20 at 40.) Specifically, Petitioner argues that trial counsel contradicted this strategy when he asked Petitioner about the victim's "violent language and violent drug and alcohol tendencies." (Docket No. 10 at 15 and Docket No. 20 at 40.)

Petitioner also asserts that defense counsel's "theory was not supported by the facts" and offers his version of what the facts purportedly demonstrated. (Docket No. 20 at 40) However, Petitioner fails to provide any citation to the record demonstrating that he rebutted the TCCA's findings regarding trial counsel's testimony, which are presumed to be correct, with clear and convincing evidence of his alternate factual allegations, as required by 28 U.S.C. § 2254(e)(1). Nor does Petitioner provide any basis that the TCCA made an unreasonable determination of the facts from the evidence presented. *See* 28 U.S.C. § 2254(d)(2).

Petitioner additionally asserts that the state asked a witness about the victim's character despite purportedly making a deal to not allow the jury to hear any character evidence – a "Jury-out" deal – including about the victim's felony assault on a police officer and other instances of violence. (Docket No. 10 at 15; Docket No. 20 at 41-42).[18] Petitioner argues that, despite this purported agreement, his trial counsel permitted the state to make "unsubstantiated allegations" that he "hit his girlfriend," Stacey McCoy. (Docket No. 10 at 16.) Further, in his reply, Petitioner maintains that introducing character evidence about the victim "would have been the only

---

[18] Petitioner also argues that his counsel should have called a Metro Nashville police officer to discuss a prior incident involving the victim. (*Id.* at 41–42.)

reasonable trial strategy when asserting a claim of self-defense" and that the strategy that trial counsel did employ – forwarding a defense theory that the victim "suddenly snapped," which caused Petitioner to fear for his life – was not supported by the facts "because the more intoxicated that [the victim] became[,] the more aggressive[] he was becoming." (Docket No. 20 at 39–40.)

Just as with many of his other claims, however, Petitioner has failed to demonstrate that the state court's application of the *Strickland* standard was objectively unreasonable. *Harrington*, 562 U.S. at 101. Petitioner again reiterates the same arguments he made to the TCCA but fails to demonstrate a basis for the *habeas* relief he seeks. The TCCA reasonably – and consistently with *Strickland* and its progeny – presumed from trial counsel's testimony at the post-conviction hearing and the lack of other evidence by Petitioner that counsel's conduct "fell within the wide range of reasonable professional assistance" guaranteed by the Constitution. *Hutchison*, 303 F.3d at 749 (internal citation omitted).

In short, there is no basis from which the Court can conclude that it should not give effect to the doubly deferential standard it is required to apply. In the absence of any showing that TCCA's decision either was contrary to federal law, unreasonably applied federal law, or was based on an unreasonable determination of facts, none of which Petitioner has demonstrated here, he is not entitled to relief on this claim.

### E.      Claim: Failure to Adequately Cross-Examine Witnesses

Petitioner asserts that his counsel rendered ineffective assistance by failing to cross-examine three people or categories of people: (1) "police officers with conflicts of interest and/or bias"; (2) "T.J. Howard, when even the Court stated he was perjurious"; and (3) "Eric Beddingfield." (Docket No. 1 at 6.) He also argues that his trial counsel failed to present

unspecified evidence related to Petitioner's accusation that police officer Michael Kent previously stole a gun from Petitioner.[19] (Docket No. 10 at 21–25.)

With respect to the law enforcement officers, Petitioner claims that, in an unrelated incident in 2013, Officer Michael Kent stole a gun from Petitioner's home and Detective Leonard Peck, Jr. was involved in the investigation of this alleged theft. (*Id.* at 4, 21–24.) After police arrived at the scene following the shooting, Petitioner allegedly stated something to the effect of "he tried to rob me" or "he robbed me." Petitioner claims that he was referring to Officer Kent, and not the victim, when he made these statements. (*Id.* at 23.) Petitioner asserts that his trial counsel failed to cross-examine Officer Kent and Detective Peck about the 2013 incident, which he contends would have established the officers' bias towards him and would have explained the statements he made after the shooting about being robbed. (*Id.* at 22–24.)

Regarding T.J. Howard, who was with Petitioner and the victim at the bar shortly before the shooting occurred, *Ferrell II*, 2020 WL 5230387, at *1, Petitioner claims that Howard was not a credible witness because he lied about witnessing the shooting and the victim's fall. (Docket No. 10 at 21.) Petitioner argues that a photo of the front of the bar where the shooting occurred would demonstrate that Howard could not have witnessed the shooting, but his trial counsel failed to introduce this photo. (*Id.* at 22.)

Similarly, Petitioner claims that his counsel failed to properly impeach Eric Beddingfield, who was a friend of the victim, and in whose company Petitioner had been earlier in the evening prior to the shooting. *Ferrell II*, 2020 WL 5230387, at *1. Petitioner claims that his counsel did not "use any previous statements to impeach" Beddingfield even though Beddingfield made a

---

[19] Petitioner also discusses his trial counsel's failure to introduce a photograph of the front of the bar, which this Court discussed above.

"number of untrue statements" about the victim's character, the victim's behavior prior to the shooting, and the events preceding the shooting. (Docket No. 10 at 21.) Petitioner provides no other information or argument about Beddingfield.

Respondent argues that this claim must be denied because it is procedurally defaulted. (Docket No. 16 at 46–48.) Respondent asserts that Petitioner did not make arguments during the post-conviction proceedings about his counsel's failure to cross-examine Howard or Beddingfield. (*Id.* at 46.) Respondent contends that Petitioner may not, therefore, seek federal relief with respect to those two witnesses.

The Court agrees. A review of the post-conviction record shows that Petitioner did not assert that his trial counsel was ineffective for failing to cross-examine Howard and Beddingfield. Although Petitioner raised several other arguments related to Howard – which the Court addresses below – Petitioner did not allege that his counsel failed to cross-examine Howard about Howard's alleged lies. At one point in his briefing to the state courts, Petitioner asserted that his trial counsel "failed to challenge the character evidence from Mr. Beddingfield and the perjurious testimony of TJ Howard." (Docket No. 15-30 at 41.) However, he provided no other argument or support for this position. This brief reference is not sufficient to demonstrate that the TCCA was fairly presented with the argument that Petitioner now raises in this Court. *See Baldwin*, 541 U.S. at 29; *Gray*, 518 U.S at 162–63; *Wagner v. Smith*, 581 F.3d 410, 414, 417 (6th Cir. 2009).

Accordingly, the Court will only examine the merits of Petitioner's claim that his trial counsel was ineffective for failing to cross-examine Officer Kent and Detective Peck. The TCCA summarized trial counsel's testimony at the post-conviction hearing with respect to this issue:

> Trial counsel testified that he was aware that Petitioner had accused a police officer [Officer Kent] of stealing one of his guns. Petitioner accused Detective Peck of being aware of the theft and covering it up to protect the officer. Trial counsel did not question Detective Peck or any of the police witnesses about the allegation

> because he found no proof to substantiate the claim. Trial counsel testified, "[t]here
> was never any proof anywhere that the officer had actually done that."

*Ferrell II*, 2020 WL 5230387, at *4. The post-conviction court found that trial counsel was not

deficient for failing to cross-examine the police officers. *Id.* at *11. That court further found that

avoiding this issue was a reasonable strategic decision because "a jury could easily have rejected

the Petitioner's claim [that Officer Kent stole his gun] absent independent corroborating evidence

and linked the Petitioner with being untruthful." *Id.* In its review, the TCCA held that the evidence

did not preponderate against the post-conviction court's findings and that Petitioner "presented no

proof at the post-conviction hearing to substantiate his allegation." *Id.* at *12. In the absence of

any such evidence, the TCCA determined that Petitioner was not entitled to relief. *Id.*

Yet again, Petitioner fails to demonstrate that "the state court's application of the *Strickland*

standard was unreasonable." *Harrington*, 562 U.S. at 101. Petitioner reiterates the same arguments

he made to the TCCA. In fact, he expressly states that he "reasserts that Trial Counsel was

ineffective for failing to utilize evidence which would have reasonably altered the outcome of the

proceedings." (Docket No. 20 at 50.) Reasserting the arguments made to the state court is not

enough. "[W]hen a claim of ineffective assistance of counsel is raised in a federal habeas petition,

such as here, the question to be resolved is not whether the petitioner's counsel was ineffective."

*Bogle*, 2021 WL 5331278 at *13. Rather, "[t]he pivotal question is whether the state court's

application of the *Strickland* standard was unreasonable." *Id*. (quoting *Harrington*, 562 U.S. at 86

(2011)). Here, the answer to that determinative question is no. Petitioner has failed to demonstrate

that the TCCA's decision was contrary to federal law, unreasonably applied federal law, or was

based on an unreasonable determination of facts. Petitioner's claim is therefore without merit.

**F.      Claim: Failure to Object to "Inappropriate Arguments" Made by the State**

Petitioner asserts that his trial counsel was ineffective because he failed to "object to clearly inappropriate arguments by the State of Tennessee." (Docket No. 1 at 6.) In his memorandum in support of his petition and in his reply, Petitioner intermittently references instances when he believed objections would have been appropriate or helpful to his case. None of these, however, constitute a complete and cogent claim.[20]

In its response, Respondent maintains that Petitioner is not entitled to the Court's consideration of this issue because Petitioner failed to "state the facts supporting" this claim in his petition as required under Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts. (Docket No. 16 at 48–49.) Respondent also asserts that this claim is procedurally defaulted because Petitioner did not raise it to the state courts for their review and that Petitioner has not demonstrated any cause to excuse his failure to exhaust this claim. (*Id.* at 49–50.)

In his reply, Petitioner does not address Respondent's contentions that this particular claim is unsupported by facts and procedurally defaulted. (Docket No. 20.) Rather, Petitioner broadly – and somewhat incomprehensibly – addresses the issue of procedural default in connection with Petitioner's claim for ineffective assistance of counsel for failure to file a suppression motion:

> Respondent argues that the procedural default doctrine is also related to § 2254's exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (noting the "interplay" between the exhaustion rule and the procedural default doctrine). If the State Court decides a claim on an independent and adequate state ground (such as a procedural rule prohibiting the State Court from reaching the

---

[20] As discussed below, the Court has identified some of these instances in the context of other of Petitioner's claims. However, it is not incumbent upon the Court to identify every sporadic instance in which Petitioner might have referenced a failure of this counsel to object to the prosecutor's statements. *Ballard v. Nagy*, 2023 WL 6280254, at *4 ("Put simply, the Court is not obligated to search the record on Petitioner's behalf to make his case for him.")

merits of the constitutional claim), the procedural default doctrine ordinarily bars a Petitioner from seeking Federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977). However, Respondent's argument regarding any procedural default cannot resolve how the claim was procedurally barred and whether the state law grounds were independent and adequate. The State Court's Order at issue was ambiguous because there cannot be a presumption of a procedural bar because there is no prior order to "look through" to which resolves any rejection of a claim. *Guilmette v. Howes*, 624 F.3d 286, 291–92 (6th Cir. 2010) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

(*Id.* at 17.)

The Court finds it unnecessary to address whether this claim was procedurally defaulted, because Petitioner provides neither factual support for nor any analysis of this specific claim of counsel's deficient failure to object to purportedly inappropriate arguments made by the state, and the Court therefore finds that the claim is waived. *Gray*, 692 F.3d at 521 ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (internal quotations omitted). At best, Petitioner discusses the purported failure of counsel to object in the context of other claims that the Court has already addressed as having no merit.

For example, Petitioner states that his counsel should have objected when a video of his interview with police was shown. (Docket No. 10 at 11.) This is Petitioner's claim of ineffective assistance of counsel for failure to file a suppression motion, for which, as discussed at length above, Petitioner fails to offer any basis from which to conclude that his trial attorney's rationale for not filing a motion to suppress was not sound trial strategy.

The closest Petitioner comes to making a comprehensive argument is his assertion that his counsel "failed to object" to the state's allegations that Petitioner "hit his girlfriend," Stacey McCoy. (Docket No. 20 at 36.) However, these arguments are made in the context of Petitioner's

claim that his trial counsel failed to call Stacey McCoy to testify. (*Id.* at 35–36.) As discussed above, the Court likewise finds no merit in that claim. For these reasons, Petitioner is not entitled to relief on this claim.

**3.      THE WEATHER AND ITS IMPACT ON A WITNESS'S ABILITY TO TESTIFY (CLAIM 3)**

In his petition, Petitioner asserts that his trial was "harmed by failure to continue when defense witnesses couldn't get to court due to extreme weather." (Docket No. 1 at 8.)[21] Essentially, Petitioner argues that his trial counsel's failure to call Susan Branam as a witness and failure to request a continuance of the trial when Branam could not appear because of the weather "interfered with the petitioner's ability to present any defense, much less a complete and competent defense" because Branam would have "corroborated the petitioner's own testimony, challenged the State's theory of events, and directly impeached both T.J. Howard's and Eric Beddingfield's testimonies." (Docket No. 10 at 28.) In support of this claim, Petitioner states:

> Defense witness Susan Bran[]am wrecked in her own driveway and was unable to appear on the last day of trial. The 2013 Ice Storm blanketed Nashville and Middle Tennessee. Closing down schools. businesses. and all other courts and court offices in Davidson County. Jurors were ferried in via four wheel drive vehicles driven by sheriff deputies. Bran[]am later testified at Petitioner's sentencing hearing as to what she would have said at trial. Her testimony supported the Petitioner's trial testimony.

(*Id.*) In his supporting memorandum, Petitioner asserts that his counsel "did not request a continuance" of the trial to allow for transportation for witnesses to be arranged. (Docket No. 10 at 27.) He does not explicitly state the exact nature of this claim, but he does reference one case, *Walker v. Lockheart*, 807 F.2d 136 (8th Cir. 1986). In that case, the Eighth Circuit found that defense counsel's failure to request a continuance to secure an incarcerated witness was an error

---

[21] This claim is addressed in Petitioner's reply in his arguments that trial counsel was generally ineffective for failing to call Branam as a witness.  (Docket No. 20 at 33-34.)

resulting in prejudice to the petitioner. *Id.* at 139. The Eighth Circuit analyzed those circumstances as an ineffective assistance of counsel claim. *Id.* at 139-40.

Respondent argues that this claim is procedurally defaulted. (Docket No. 16 at 50–52.) Respondent asserts that, in the state court proceedings, Petitioner's claim focused on the misapplication of the "missing witness rule" (Docket No. 15-30 at 49-50), which is a state law, and which cannot be reexamined by this Court:

> It is incontrovertible that error in the application of state law is not cognizable in federal habeas proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state- court determinations on state-law questions."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). As such, and to the extent Petitioner's claim mirrors his claim presented on post-conviction review, the claim is not cognizable in this forum.

(*Id.* at 51.) Respondent also contends that, because the TCCA did not reach the merits of the claim due to its determination that the claim was waived by Petitioner, this Court cannot provide federal *habeas* review. (*Id.* at 51–52.)[22]

In its decision, the TCCA framed this claim as a violation of Petitioner's due process rights because of inclement weather but found Petitioner's argument to be "unclear." *Ferrell II*, 2020 WL 5230387, at *12. The TCCA held that the claim was waived pursuant to Tenn. Code Ann. §

---

[22] Respondent also asserts that, to the extent this is a claim for ineffective assistance of counsel, Petitioner failed to present this claim to the state courts during post-conviction proceedings. (*Id.* at 52.) Because *habeas* relief is unavailable to Petitioner on other grounds, the Court finds it unnecessary to reach the question of whether Petitioner failed to exhaust this claim in state court as an additional basis upon which to deny relief. Nevertheless, because Petitioner failed to present his claim for ineffective assistance of counsel based on *Walker* during his state court post-conviction proceedings and can no longer do so under state procedural rules, the claim is unexhausted but procedurally defaulted. Petitioner has not demonstrated neither cause for the default nor actual prejudice that would excuse the default.

40-30-106(g) and Tenn. Sup. Ct. R. 28, § 2(D) because Petitioner raised this issue for the first time in his petition for post-conviction relief. *Id.*

When a state court rejects a *habeas* petitioner's claim pursuant to an independent and adequate procedural ground, that claim has been procedurally defaulted. *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004). Specifically, "Tennessee's waiver rule … constitutes an adequate and independent state law rule precluding habeas relief." *Hutchison*, 303 F.3d at 738.

Further, the record is clear that Petitioner relied on the "missing witness rule" as the basis for his requested post-conviction relief for Branam's absence at trial due to weather. (Docket No. 15-30 at 49-50.) It is a well-established rule that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

This Court cannot grant *habeas* relief with respect to this claim. Petitioner fails to clearly articulate the foundational basis upon which he seeks relief; that is whether this is a claim of ineffective assistance of counsel or a violation of due process claim. To the extent that this is a claim for ineffective assistance of counsel for failing to call Susan Branam to testify, as Petitioner's reply suggests (Docket No. 20 at 33-34), the Court has already found that such a claim has no merit, as detailed above. To the extent this is a claim for a violation of procedural due process rights, the Court finds that it is procedurally defaulted because the TCCA held that Petitioner waived the claim. *Ferrell II*, 2020 WL 5230387, at *12. In the absence of a showing of cause for the default and some resulting prejudice to Petitioner, which the Court finds are lacking, Petitioner

has simply not provided any basis upon which this Court can review this claim, let alone grant relief. For these reasons, Petitioner is not entitled to *habeas corpus* relief on this ground.[23]

## 4.    PROSECUTORIAL MISCONDUCT (CLAIM 4)

In his final claim, Petitioner asserts that he is entitled to *habeas* relief for "prosecutorial misconduct." (Docket No. 1 at 10.) Prosecutorial misconduct claims are "reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). *See Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006). "[T]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "The touchstone of due process analysis … is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). *See Serra v. Mich. Dep't Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993). Federal *habeas corpus* relief may be granted "only if the statements were so flagrant as to render the entire trial fundamentally unfair." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003). To obtain *habeas* relief in federal court, a petitioner

---

[23] Although not necessary to the outcome of this claim, the Court also finds that *Walker* is distinguishable and does not compel the relief sought by Petitioner. In *Walker*, the Eighth Circuit expressly noted that "ineffective assistance of counsel complaints based on the failure to secure witness testimony are disfavored because presentation of evidence is a matter of trial strategy." 807 F.2d at 139 (citations omitted). In that case, however, the defense counsel's failure to request a continuance to secure the incarcerated witness was not attributable to trial strategy but to counsel's failure to interview the witness and failure to follow proper procedures to obtain a witness from the state penitentiary. *Id.* Here, Petitioner has not offered any clear and convincing evidence to rebut the factual findings made by the post-conviction court of the reasons why counsel decided to not call Branam to testify, independently of the weather issues, *Farrell II*, 2020 WL 5230387, at **3, 9, and 10, which the post-conviction court determined was reasonable trial strategy, a conclusion with which the TCCA, in applying *Strickland*, agreed. Because *Walker* is not a decision of the Supreme Court, it is not "clearly established federal law" that would make Section 2254(d)(1) applicable. Further, because of the factual distinctions with this case, *Walker* provides little helpful guidance.

must establish that "the prosecution's conduct was both improper and so flagrant as to warrant reversal." *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003).

> In the petition, Petitioner lists the following as "supporting facts" for this claim:
>
> The State's misconduct falls into two categories: Knowing use of perjured testimony, and improper language. The perjury from witness T.J. Howard, who lied in trial, claiming to have "seen the shooting", which was proven to have been "physically impossible", later in the PCR hearing; Eric Beddingfield testified to the character of peace and good nature of the Decedent. This was also blatant and intentionally misleading testimony. Prosecutors knew the testimony of Howard and Beddingfield to be untrue and misleading, so much so that the State insisted on a pretrial meeting to exclude the Decedents violent and criminal history. Secondly, in the case of improper language, the State repeatedly used inflammatory language, vouched for witnesses, impugned the Petitioner's credibility repeatedly, spoke of evidence not at trial, spoke of prior bad acts (despite their insistence to the contrary pretrial), misstated material facts, and, on occasion, out right lied.

(Docket No. 1 at 10.) In his supporting memorandum, Petitioner discusses and quotes extensively from *Stermer v. Warren*, 959 F.3d 704 (6th Cir. 2020). (Docket No. 10 at 29–31.) He then asserts that the prosecutor committed the following instances of misconduct: "relentlessly attacked the petitioner's character in personal terms"; "argued evidence not entered at trial"; expressed his opinion about the credibility of witnesses"; "disparaged the petitioner for his gun ownership"; and "threatened the [petitioner's] then girlfriend, Stacey McCoy, … with 'perjury charges', should she elect to testify on behalf of the petitioner." (*Id.* at 31–32.) Petitioner concedes that this issue has "<u>NOT</u> been exhausted," but nevertheless asks this Court to "recognize it sua sponte, in the interest of justice." (*Id.* at 33.)

Respondent contends that Petitioner's prosecutorial misconduct claim is both procedurally defaulted and meritless. (Docket No. 16 at 52–56.) Respondent points to the TCCA's opinion in which it found that Petitioner waived this claim because he raised it for the first time on appeal. (*Id.* at 52–53.) Respondent asserts that the claim is unexhausted, and therefore procedurally defaulted, which precludes this Court's review. (*Id.* at 53 (citing *Coleman*, 501 U.S. at 732;

*Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000); Tenn. Code Ann. §§ 40-30-102(a)–(c), 40-30-117).) Respondent also argues that the claim for prosecutorial misconduct has no merit because Petitioner has failed to demonstrate both to the TCCA and to this Court that the state knowingly used false testimony, which applicable federal law obligates Petitioner to do. (*Id.* at 54–55 (citing *Rosencrantz v. Lafler,* 568 F.3d 577, 583–84 (6th Cir. 2009)).)

In his reply, Petitioner contends that he was denied a fundamentally fair trial because of the state's prosecutorial misconduct. (Docket No. 20 at 43–48.) He frames his claim as having two components: (1) the state's knowing use of false testimony and (2) improper language. With respect to false testimony, Petitioner claims that Howard falsely testified that he saw the shooting, which the state knew to be untrue, and which was proven to be untrue at the post-conviction hearing. Petitioner also claims that Beddingfield falsely testified that the victim was peaceful and good-natured, which the state knew to be untrue because of the victim's prior felony assault on a police officer. Petitioner describes these two pieces of testimony as "blatant and intentionally misleading." (*Id.* at 44.) With respect to improper language, Petitioner claims that the state "repeatedly used inflammatory language, vouched for witnesses, impugned repeatedly on Petitioner's credibility repeatedly, asserted facts not in evidence, alleged prior bad acts and misstated material facts." (*Id.*) Petitioner does not provide examples of this improper language or point to where this improper language can be found in the record.

Petitioner then argues that the focus must be on whether there was a due process violation. (*Id.*) He argues that he was "denied fundamental fairness." (*Id.*) Petitioner hinges his arguments on the post-conviction court's finding that Howard "lied in his testimony during trial." *Ferrell II*, 2020 WL 5230387 at *12. That court found that Howard testified that he "witnessed or heard an

exchange prior to the shooting," but that he could not have done so because he was in the bathroom at that time with another person. *Id.*

In its decision, the TCCA concluded that Petitioner's claim for alleged improper prosecutorial misconduct was both waived and without merit. *Ferrell II*, 2020 WL 5230387 at *12–13. The TCCA found that the issue was not raised in Petitioner's post-conviction petitions or addressed by the post-conviction court, and that Petitioner failed to establish that the state knowingly elicited false testimony. *Id.* (citing *State v. Spurlock*, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993); *Bell v. State*, No. 03C01-9210-CR-00364, 1995 WL 113420, at *8 (Tenn. Crim. App. Mar. 15, 1995)). The TCCA held that Petitioner was therefore not entitled to relief.

Petitioner argues, however, that the TCCA's resolution of this claim violates 28 U.S.C. § 2254(d)(1) because "the prosecutorial misconduct was egregious where the prosecution knowingly used perjured testimony from Mr. Howard which was material to the case." (*Id.* at 45 (citing *Giglio v. U.S.*, 405 U.S. 150, 154 (1972); *Napue v. Illinois*, 360 U.S. 264, 272 (1959); *Brady v. Maryland*, 373 U.S. 83 (1963)).) In other words, Petitioner believes the TCCA's decision was contrary to or involved an unreasonable application of federal law regarding prosecutorial misconduct.

Petitioner's argument that the state had knowledge of Howard's false testimony consists largely of: "if Trial Counsel knew that the witness's testimony was perjured then the prosecution reasonably knew." (*Id*. at 47.) Petitioner asserts that this Court cannot give deference to the TCCA's finding because "the State reasonably knew that the testimony at trial was perjured." (*Id.*) He contends that this "error" affected his "substantial rights" and is, therefore, "prejudicial." (*Id.*) In addition, Petitioner contends that the prosecution's allegation that he "hit his girlfriend" is an example of misconduct because this "presented facts not in evidence," and therefore the allegation was unsubstantiated and prejudicial. (*Id.* at 48.)

The Court agrees that Petitioner's claim for prosecutorial misconduct is procedurally defaulted. *Baze*, 371 F.3d at 320 (claim is procedurally defaulted when state court rejects a petitioner's claim on an independent and adequate procedural ground); *see also Hutchison*, 303 F.3d at 738 ("Tennessee's waiver rule … constitutes an adequate and independent state law rule precluding habeas relief.") Here, the TCCA rejected Petitioner's claim based on waiver because Petitioner had not presented the claim to the post-conviction court. *Ferrell II*, 2020 WL 5230387 at *12. Instead, the claim was based, in large part, on a finding made by the post-conviction court. *Id.* ("The issue was not raised in Petitioner's post-conviction petitions, and it was not addressed by the post-conviction court, because the issue stems from … the postconviction court's order."). Further, Petitioner did not argue to the state courts that the prosecution engaged in misconduct by stating that he "hit his girlfriend." Consequently, that argument is not properly before this Court. For these reasons, this Court is precluded from reviewing Petitioner's prosecutorial misconduct claim.

In addition, even if Petitioner's claim was properly before this Court, including if the Court were to find cause for the default because Petitioner could not have previously addressed the post-conviction court's finding, the claim is without merit. Petitioner has not shown that the TCCA's adjudication of this claim meets the standards for relief under Section 2254(d). In other words, he has not demonstrated that the TCCA's decision was contrary to or involved an unreasonable application of clearly established federal law or an unreasonable determination of facts.

In its decision, the TCCA found, on the merits of Petitioner's claim, that he failed to establish that the state "knowingly elicited false testimony." *Ferrell II*, 2020 WL 5230387 at *13. To support this finding, the TCCA referenced two state court cases, both of which rely on federal law. In the first case, *Spurlock*, the TCCA stated:

It is a well established principle of law that the state's knowing use of false testimony to convict an accused is violative of the right to a fair and impartial trial as embodied in the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, §§ 8 and 9 of the Tennessee Constitution. *Pyle v. Kansas*, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942); *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); *Hall v. State*, supra.

When a state witness answers questions on either direct or cross examination falsely, the district attorney general, or his assistant, has an affirmative duty to correct the false testimony. *See Giglio v. United States*, *supra*; *Napue v. Illinois*, *supra*; *Blanton v. Blackburn*, 494 F.Supp. at 900 ("it is the responsibility of the prosecution to correct the evidence"); *Hall v. State*, 650 P.2d at 896 ("[d]ue process ... imposes an affirmative duty upon the State to disclose false testimony which goes to the merits of the case or to the credibility of the witness"). Whether the district attorney general did or did not solicit the false testimony is irrelevant. *United States v. Barham*, 595 F.2d 231 (5th Cir. 1979). However, if the prosecution fails to correct the false testimony of the witness, the accused is denied due process of law as guaranteed by the United States and Tennessee Constitutions. *Giglio v. United States*, 405 U.S. at 153–154, 92 S.Ct. at 766, 31 L.Ed.2d at 108; *Napue v. Illinois*, 360 U.S. at 269, 79 S.Ct. at 1177, 3 L.Ed.2d at 1221. In *Napue* the Supreme Court said:

> First, it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. . . . The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. . . .(Citations omitted).

*Id.* This rule applies when the false testimony is given in response to questions propounded by defense counsel for the purpose of impeaching the witness. *Giglio v. United States*, *supra*; *Napue v. Illinois*, *supra*; *Campbell v. Reed*, 594 F.2d 4, 7 (4th Cir. 1979).

874 S.W.2d at 617–18. In the second case, *Bell*, the TCCA referred to many of these same federal

cases. 1995 WL 113420 at *7–8 (citing *Pyle*, 317 U.S. at 215–16; *Mooney*, 294 U.S. at 112–13;

*Napue*, 360 U.S. at 269; *Giglio*, 405 U.S. at 153; *Bagley*, 473 U.S. at 681–82; *Strickland*, 466 U.S.

at 669).

Petitioner does not explain how the TCCA's determination that he failed to establish that

the state knowingly elicited false testimony is contrary to federal law, except to argue that the

prosecution "reasonably knew" or "reasonably believed" that Howard and Beddingfield testified

50

falsely, so he must be granted a new trial. (Docket No. 20 at 45, 47.) But Petitioner offered no evidence to demonstrate that the state actually knew that the testimony was false.[24]

Even if trial counsel and the post-conviction court believed that Howard lied, that does not demonstrate that the *prosecution* knew that Howard's statements were false. *See Rosencrantz*, 568 F.3d at 583–54 ("To prove that the prosecutor's failure to correct false testimony violated due process rights, a petitioner must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.") (citations omitted). Petitioner's characterization is not evidence of the state's knowledge. Accordingly, the Court finds no merit in Petitioner's argument that the TCCA made a decision that was contrary to, or involved an unreasonable application of, clearly established federal law within the meaning of Section 2254(d)(1). Neither was the TCCA's decision based on an unreasonable determination of the facts. For these reasons, Petitioner is not entitled to *habeas corpus* relief on this ground.

## 5.    PETITIONER'S ADDITIONAL REQUESTS

In his memorandum in support of his petition, Petitioner makes three additional requests: (1) for a new hearing; (2) for the "appointment of counsel to arrange all witnesses, experts, and exhibits for a new hearing/electronic hearing"; and (3) to supplement the technical record with "various articles and photographs and reports." (Docket No. 10 at 3–8.) Based on the recommendation for denial and dismissal of the petition without the need of an evidentiary hearing, the Court finds it unnecessary to address these additional requests.[25]

---

[24] Similarly, Petitioner fails to offer any specific examples or evidence in the record of improper language by the state that would be the basis for *habeas* relief.

[25] Regarding supplementation of the record, the decision to expand the record is within the sound discretion of the district court. *West v. Bell*, 550 F.3d 542, 551 (6th Cir. 2008) (citing *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988)). Petitioner provides only a vague and general assertion that these documents should be added to the record. He does not provide the Court with

## VI.    RECOMMENDATION

For the reasons discussed above, it is respectfully **RECOMMENDED** that the petition for *habeas corpus* relief filed in this action be **DENIED** and this action be **DISMISSED**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

---

any supportable argument as to why these documents are necessary to the resolution of his claims or the propriety of adding them to the record at this juncture.